Sloss, Appellant, *v.* Greenberger.

Argued May 1, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

354

[black redaction bars]

*Albert E. Acker,* with him *Wiesen, Cusick, Madden, Joyce, Acker and McKay,* for appellants.

*Cyril T. Garvey,* with him *Thomas H. Armstrong,* and *Evans and Garvey,* for appellee.

OPINION BY MR. JUSTICE BELL, July 2, 1959:

Plaintiffs' motion to take off a nonsuit was dismissed, and from the Judgment of nonsuit plaintiffs have appealed. It is, of course, hornbook law that plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, and all conflicts therein must be resolved in his favor: *Seburn v. Luzerne and Carbon County Motor Transit Co.,* 394 Pa. 577, 148 A. 2d 534; *Finnin v. Neubert,* 378 Pa. 40, 105 A. 2d 77; *Lewis v. Quinn,* 376 Pa. 109, 101 A. 2d 382.

Reviewing the testimony in the light most favorable to the plaintiffs, the following facts were established. Plaintiff, Helen Sloss, and her granddaughter entered defendant's store, known as Southside Korner Market. Defendant's store is a self-service supermarket. After selecting a cart and shopping for a time, Mrs. Sloss left her shopping cart to go to another part of the market in order to speak to Mr. Reyer, a friend. While speaking to Mr. Reyer, Mrs. Sloss turned to her right to go toward Mrs. Reyer. As she turned she took one step along the aisle and "the toes of my left foot[*] became caught in this object which felt like wire on my

---

[*] She wore open toed shoes.

leg and I immediately fell . . .". It was argued that she caught her foot in one of the wire baskets which occupied two rows of store space which were placed on one side of the aisle, upside down with produce on the top. These baskets were in plain sight of everyone; their height, width and position were obvious to all, there was nothing to obstruct Mrs. Sloss' vision; and while the baskets extended into the aisle, there was ample room to walk around them.

Plaintiff's contention that she did not walk into the basket, but rather that she caught her toes on a piece of wire *jutting out from the basket,* is utterly unsupported by the evidence; and there is absolutely no adequate proof of negligence on the part of defendant. It is normal, and certainly not improper, practice for supermarket operators to use part of the aisle for sale or display purposes, and it is impossible to find anything dangerous or even improper or unreasonable in the present display.

Even if there were evidence to prove that a piece of wire jutted out from the basket, defendant is not an insurer, and plaintiffs could not recover because they failed to prove defendant had actual or constructive knowledge of this condition. Moreover, even assuming, arguendo, that a jury could find that defendant was negligent under plaintiffs' evidence, it is clear that plaintiff was contributorily negligent. When plaintiff walked into one of a row of baskets in clear sight in a wide, well lighted aisle, with nothing to obstruct her vision, she certainly failed to exercise that degree of reasonable care which the law demands.

In *Druding v. Philadelphia,* 374 Pa. 202, 97 A. 2d 365, where this Court entered judgment for defendant non obstante veredicto because of plaintiff's contributory negligence, the Court said (page 204): " 'No person is required to take extraordinary precautions to

save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness. . . . "Everyone has a right to proceed upon the assumption that those to whom he owes a duty of care are normal in every respect and prepared on their part to exercise the care of prudent persons generally" ': Jefferson v. Y.M.C.A., 354 Pa. 563, 567, 47 A. 2d 653.

. . .

" 'What this court stated in Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A. 2d 754, applies to the instant case: ". . . When an individual can assure his own safety by the use of his senses, he must do so or abide the consequences of his carelessness. . . . The duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction. . . . The rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery:" ' Bartek v. Grossman, 356 Pa. 522, 525, 52 A. 2d 209."

Judgment of nonsuit affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The self-serving supermarket is one of the amazingly interesting phenomena of the high speed life in America today. Commodities of all kinds are attractively wrapped, glitteringly displayed, and ingeniously arranged so that the visitor gets the effect of attending an amusement palace rather than a large grocery store. Shining cellophane, multi-colored paper, floating ribbons, and clever designs all create a circus atmosphere engendering excitement, anticipation, and the urge for acquisition.

This, of course, is all planned by the merchants with the aid of highly skilled experts who know how to appeal to the eye and the purse. There is nothing wrong about this. In fact, there is something highly commendable about a type of marketing which allows the customer to obtain under one roof many articles which otherwise would necessitate visiting four or five different stores.

However, every advantage has its disadvantage and every benefit is paid for in one way or another. By allowing the customer to believe that he is being given a great deal of freedom in selecting his own purchases, the merchant saves on clerk expense. In addition, while one customer is methodically checking off the list of things he is to purchase, another customer may be preparing hard luck for him. This other customer may pick up a box of crackers, a bottle of ketchup, and a carton of tomatoes. Then he may decide that he does not need the tomatoes and he will restore the carton to its place, approximately, on the counter. Then another customer may pick up a basket which he later decides he does not need and he then restores the basket, approximately, to the place where it originally was.

There is no clerk around to guide the customer, no one to re-arrange the things the sloppy customer has disarranged. Some customers push their shopping carts before them carefully, others move along as if they were playing hockey, driving their carts into brooms and stacked baskets, turning sharp corners, often knocking packages of fruit, vegetables, and other items to the floor.

In the case here for consideration, some unknown person pushed a wire basket into the aisle of Southside Korner Market where the plaintiff, Mrs. Sloss, was shopping. Some other unknown person let a potato sack drop over the basket. Moving along, Mrs. Sloss

did not see the wire basket extending into the aisle, the toes of her left foot became entangled in a protruding wire from the basket, she tripped, fell and broke her arm. She brought suit against the store owner and she was nonsuited on the ground that she did not prove negligence or exculpate herself from contributory negligence. This Court has affirmed the nonsuit.

The owner of a store has the duty to arrange his merchandise and equipment in such a fashion that it will not endanger the safety of his patrons. Whether the owner here discharged his obligation in a satisfactory manner was a question of fact for the jury. The customer in a supermarket does not and cannot all the time keep his eyes glued to the floor over which he is pushing the cart. He is, in a way, seller as well as buyer. In a non-self-service store, the customer stands still and asks the clerk for an article which the clerk brings to him. In a self-service store the customer must do work which really belongs to the store-owner. He must search for the article he wants, take it down from the shelf and then put it into the cart. His eyes must seek and quest as he moves along. The very least the owner of the store should be required to do is, therefore, to keep the aisles clear. The owner did not do so in this case.

A witness by the name of C. A. Reyer testified that after Mrs. Sloss fell, he noticed that "one of these wire containers was pulled out. The north end was pulled out noticeably in the aisle."

If this statement represents fact, and in this type of an appeal, we are required to regard it as fact, why would it not be a question for the jury to determine whether the owner of the supermarket, in allowing a wire basket, ambushed beneath a potato sack, to protrude in the aisle, exercised the care which he owes to his customers?

I would remove the nonsuit.